# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Bonanza Beverage Co., | Case No.: 2:18-cv-01445-JAD-GWF |
| Plaintiff | **Order re: Motions for a Preliminary Injunction, Dismissal, and Summary Judgment, and Related Matters** |
| v. | |
| MillerCoors, LLC, | [ECF Nos. 6, 13, 47, 58] |
| Defendant | |

Bonanza Beverage Company holds the exclusive right to sell MillerCoors products to retailers in the Las Vegas area. Their relationship is governed by a Distributor Agreement that prescribes a detailed change-in-control process. Bonanza wants to sell its franchise rights to another local distributor without completing that process, so it sues MillerCoors for a declaration invalidating that section in their contract and moves for a preliminary injunction preventing MillerCoors from enforcing it. Bonanza also moves for summary judgment on its declaratory-relief claim. MillerCoors moves to strike Bonanza's summary-judgment reply brief and evidence or for leave to file a surreply, and it also moves to dismiss all of Bonanza's claims.

After an evidentiary hearing on Bonanza's injunctive-relief motion, I ordered supplemental briefing to further clarify the basis for the parties' positions.[1] Having considered those supplements, all the briefing on the parties' motions, and the presentation at the hearing, I grant MillerCoors's dismissal motion in part and give Bonanza leave to amend, I deny Bonanza's injunctive-relief motion, and I deny as moot Bonanza's summary-judgment motion and MillerCoors's motion to strike or file a surreply.

---

[1] ECF Nos. 42 (minutes), 43 (transcript), 46 (Bonanza's supplemental brief), 51 (MillerCoors's supplemental brief).

## Background

This case focuses on a section of the Bonanza-MillerCoors Distributor Agreement titled "changes in control and ownership of distributor" that spans six pages and sets forth a detailed process for changing the control and ownership of the wholesaler.[2] There isn't any issue of interpretation; the parties agree about what this section provides: MillerCoors the right to prior written approval of the sale of Bonanza's franchise rights, provides a process for selling those rights, and renders any sale voidable at MillerCoors's discretion if Bonanza fails to follow that process.[3]

The process begins when Bonanza intends to sell its franchise rights—before Bonanza can begin the sales process, it must notify MillerCoors of its intent through a "Sale Notice."[4] MillerCoors has no obligation under the agreement to review any request for approval of a sale until Bonanza gives a Sale Notice, meets with MillerCoors to discuss the matter, and permits MillerCoors to exercise its rights under §§ 8.6, 8.7, and 8.8 of the agreement.[5] MillerCoors has the right to assign its rights under §§ 8.6, 8.7, or 8.8 to a third party of its choosing.[6]

Section 8.6 states that "[u]pon receipt of a Sale Notice, MillerCoors shall have reasonable access to and the right to inspect" Bonanza's business, books, and records.[7] Section 8.7 states that MillerCoors has the option to negotiate exclusively with Bonanza to purchase its franchise

---

[2] ECF No. 36-1 at 21–27.
[3] *E.g.*, *id.* at 23, § 8.5.2.
[4] *Id.* at §§ 8.5.1, 8.5.2.
[5] *Id.* at § 8.5.2.
[6] *Id.* at 27, § 8.11.
[7] *Id.* at 24, § 8.6.

2

rights that are contemplated by the Sale Notice for a period of 90 days.[8] MillerCoors has 30 days to decide whether it will exercise this right of exclusive negotiation.[9]

Section 8.8 states that if MillerCoors doesn't exercise its exclusive negotiation right, or does so but good-faith negotiations are not fruitful, and Bonanza decides to negotiate with a third party, then Bonanza must send MillerCoors "a bona fide nonbinding letter of intent" within 5 days of the parties signing it or at least 90 days before the close of the proposed sale.[10] Upon receiving the letter of intent, MillerCoors has "the irrevocable right and option to purchase that portion of [Bonanza's] business that is the subject of the Letter of Intent upon those terms and conditions and for the purchase price . . . ."[11] MillerCoors has 30 days to decide whether it will exercise this right of first refusal.[12]

If MillerCoors doesn't exercise this right, then the wholesaler can proceed to close the sale, subject to the terms of § 8.9. These terms include having the proposed purchaser complete a Distributor Application and delivering it to MillerCoors.[13] It is only after MillerCoors has the Distributor Application in hand, and any additional materials it has requested, that it begins to evaluate the proposed purchaser's qualifications.[14] The factors MillerCoors considers in evaluating the proposed purchaser's qualifications "include" those listed in §§ 8.9.2.1 through 8.9.2.5.

---

[8] *Id.* at § 8.7. The agreement originally provided MillerCoors with a 120-day exclusivity period but was later amended to 90 days. *Id.* at 35.
[9] *Id.* at § 8.7.2.
[10] *Id.* at 25, § 8.8.
[11] *Id.* at § 8.8.3.
[12] *Id.*
[13] *Id.* at § 8.9.1.
[14] *Id.* at 26, § 8.9.3.

Finally, the agreement states that it is governed by Nevada law, which is incorporated into the agreement and supersedes any conflicting provisions to the extent those laws "are lawfully required to be so incorporated."[15] The agreement also states that illegality or unenforceability of any provision will not impair the legality or enforceability of any other provision.[16]

## Discussion

### I. Statutory interpretation

Most of the argument in this case is about whether the section outlining the change-in-control process is unenforceable because it violates Nevada statutes governing the supply, distribution, and retail of alcoholic beverages. To determine this, I must first construe the relevant statutes, which is a question of law.[17] When interpreting a Nevada statute, courts are controlled by legislative intent and, if the statute is clear on its face, cannot look beyond the statute's plain meaning to determine legislative intent.[18] If the statutory language is ambiguous—it "lends itself to two or more reasonable interpretations"—then courts "look to the legislative history and construe the statute in a manner that is consistent with reason and public policy."[19] Courts must avoid interpretations that render statutory language "meaningless or superfluous, and if the statute's language is clear and unambiguous, . . . must enforce the statute

---

[15] *Id.* at 33, § 13.2.

[16] *Id.* at § 13.3.

[17] *Gallagher v. City of Las Vegas*, 959 P.2d 519, 521 (Nev. 1998).

[18] *State v. Lucero*, 249 P.3d 1226, 1228 (Nev. 2011).

[19] *Id.* (quotation omitted).

4

as written."[20] Courts must also "interpret a rule or statute in harmony with other rules and statutes."[21]

Chapter 369 of the Nevada Revised Statutes "implements a three-tier framework for regulating the importation, distribution, and sale of alcohol."[22] "The first tier is comprised of suppliers[,]" who, like MillerCoors, are the brewers, manufacturers, and producers of alcohol.[23] "The second tier consists of importers and wholesalers[,]" who are either the first to possess the alcohol in this state or, like Bonanza, are licensed to sell alcohol as it is originally packaged to retail stores or other licensed wholesalers.[24] The third tier is made up of retail liquor stores that are licensed to sell alcohol to consumers.[25] "This statutory framework generally requires strict interdependence between the three tiers and sets forth various restrictions on a party's activities, depending upon which tier the party falls within."[26] Indeed, NRS 369.382 expressly prohibits suppliers from engaging in the businesses of importing, wholesaling, or retailing alcoholic beverages except in limited enumerated circumstances.

Franchises and business relations between suppliers and wholesalers of alcoholic beverages are also regulated by NRS Chapter 597, which repeats the prohibition that "a person engaged in business as a supplier" of alcoholic beverages "shall not . . . [e]ngage in the business

---

[20] *George J. v. State (In re George J.)*, 279 P.3d 187, 190 (Nev. 2012) (quotation and brackets omitted).

[21] *Id.* (quotation omitted).

[22] *Chateau Vegas Wine, Inc. v. So. Wine and Spirits of Am., Inc.*, 265 P.3d 680, 684 (Nev. 2011), *as corrected on denial of reh'g* (Apr. 17, 2012).

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

5

of importing, wholesaling[,] or retailing" those beverages except in certain limited circumstances.[27] To "engage in" a business includes "participation in a business as an owner or partner, or through a subsidiary, affiliate, ownership equity[,] or in any other manner."[28] It is also declared in this chapter that

> [i]t is the policy of the Legislature to insure the orderly distribution and marketing of alcoholic beverages in this state in order to protect locally owned and operated business enterprises and those residents whose livelihoods and investments are dependent on their freedom to manage their businesses without economic and coercive control by nonresident suppliers of alcoholic beverages.[29]

Finally, and of particular dispute in this case, NRS 597.157(1) instructs that "[a] supplier shall not unreasonably withhold or delay approval of any . . . sale . . . of a wholesaler[,] . . . including the wholesaler's rights and obligations under the terms of a franchise, whenever a person to be substituted under the terms of the franchise meets the reasonable standards imposed upon the wholesaler." NRS 597.157(5) cautions that the provisions of this section "may not be modified by agreement. Any provision in an agreement is void if the provision includes such a modification."[30]

Bonanza contends that NRS 597.157 is plain and unambiguous and that it "codifies" a wholesaler's "property right to freely transfer and alienate its franchise rights" subject to only one restriction—"that the proposed transferee must meet the supplier's reasonable demands."[31]

---

[27] Nev. Rev. Stat. § 597.210(1)(a).
[28] *Id.* at § 597.200(6).
[29] *Id.* at § 597.190.
[30] *Id.* at § 597.157(5).
[31] ECF No. 46 at 7.

6

Bonanza points out that "[a]n exclusive franchise is a property right" in Nevada.[32] Bonanza argues that the process of selling a wholesaler's franchise rights is governed exclusively by NRS 597.157(1), so any contract provision on this subject is a modification and, thus, void under NRS 597.157(5).[33]

MillerCoors agrees that this statute is unambiguous but contends that it doesn't codify any rights. Rather, MillerCoors interprets this statute as applying only when the supplier has a contractual right to consent to the sale of a wholesaler's franchise rights and as merely limiting the supplier's conduct with respect to such sales and voiding contractual "provisions that purport to modify or do away with those limits."[34] MillerCoors thus argues that suppliers and wholesalers can contract about the sale of a wholesaler's franchise rights within those limits.

NRS 597.157(1) doesn't speak about any rights other than "the wholesaler's rights and obligations under the terms of a franchise," but implicit in the statute is a recognition that wholesalers and suppliers each have a legitimate interest when it comes to the rights to distribute a supplier's product. By its own terms, the statute applies "whenever a person to be substituted under the terms of the franchise meets the reasonable standards imposed upon the wholesaler" by the supplier.[35] This phrase establishes that (1) the parties are permitted to establish terms for substituting a new wholesaler in place of the old one and (2) the supplier is permitted to impose reasonable standards on its wholesalers. The statute instructs that a "supplier shall not

---

[32] *Harmon v. Tanner Motor Tours of Nev., Ltd.*, 377 P.2d 622, 630 (Nev. 1963); *cf. De Luca Importing Co., Inc. v. Buckingham Corp.*, 520 P.2d 1365, 1366–67 (Nev. 1974) (providing that "[a]n exclusive distributorship in an exclusive territory is entitled to protection equal to that of an exclusive franchise").

[33] ECF No. 6 at 16–18.

[34] ECF No. 51 at 12.

[35] Nev. Rev. Stat. § 597.157(1).

7

**unreasonably** withhold or delay . . . approval of any . . . sale . . . of a wholesaler . . . whenever a person to be substituted under the terms of the franchise meets the **reasonable standards** imposed upon the wholesaler . . . ."[36] This phrase establishes that any delay or withholding of approval by the supplier must be reasonable.

NRS 597.157 is not ambiguous, and its plain language is capable of just one reading: the statute imposes the requirement of reasonableness on a supplier's restraint of the transfer of a wholesaler's rights under a franchise agreement. The statute also prohibits the parties from contracting around this reasonableness requirement, and it voids any contractual provision that modifies it. This reading most closely resembles the interpretation proffered by MillerCoors.

Bonanza's interpretation that this statute prevents the parties from contracting about the sale of a wholesaler's franchise rights isn't reasonable because it requires the reader to ignore that the statute applies "whenever a person to be substituted **under the terms of the franchise**" meets the suppliers' reasonable standards.[37] This interpretation is further unreasonable because the statute itself doesn't contain a wisp of procedure.[38] Also unreasonable is Bonanza's interpretation that a wholesaler's right to transfer its franchise rights is subject to only one limitation: that the person to be substituted must meet the reasonable standards imposed by the supplier on wholesalers. This interpretation requires the reader to ignore that what the statute prohibits is a supplier "unreasonably" withholding or delaying in giving its consent when the person to be substituted meets the supplier's "reasonable standards" for wholesalers. With this

---

[36] *Id.* (emphasis added).

[37] *Id.* (emphasis added).

[38] The fact that Bonanza's interpretation that the entire change-in-control process is void under NRS 597.157 is not reasonable should not be read to mean that Bonanza cannot plausibly allege that some of the change-in-control provisions violate NRS 597.157 because they individually or together constitute an unreasonable delay or denial of approval.

8

construction of the relevant law in mind, I turn to the parties' arguments, beginning with MillerCoors's dismissal motion.

## II. MillerCoors's motion to dismiss under FRCP 12(b)(6) is granted in part.

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[39] While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[40] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[41] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[42]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[43] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[44] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[45] A claim is facially plausible when the complaint alleges facts that

---

[39] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[40] *Twombly*, 550 U.S. at 570.

[41] *Iqbal*, 556 U.S. at 678.

[42] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)).

[43] *Iqbal*, 556 U.S. at 678–79.

[44] *Id.*

[45] *Id.* at 679.
9

allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[46] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[47]

### A. Bonanza's third claim is dismissed with leave to amend.

Bonanza contends in its third claim for relief that MillerCoors violated NRS 597.157 when it refused to consider Bonanza's request to transfer its franchise rights to Southern Glazer's Wine and Spirits (SGWS).[48] MillerCoors argues that Bonanza has not pled a violation of this statute because Bonanza has not plausibly alleged that it complied with the change-in-control process outlined in the agreement, namely, that Bonanza hasn't provided MillerCoors with a signed non-binding letter of intent for the proposed sale that is required under the agreement to trigger MillerCoors's obligation to review Bonanza's proposed buyer.[49] As pled, Bonanza's third claim is entirely premised on its interpretation that, "[u]nder NRS 597.157(1), the only fact a supplier may consider when a wholesaler requests to transfer its rights is whether the proposed substitute wholesaler meets the supplier's reasonable standards."[50] As explained above, this is not a reasonable interpretation of the statute. Thus, Bonanza has not plausibly alleged that MillerCoors violated NRS 597.157.

Bonanza does, however, hint at theories in its response to MillerCoors's dismissal motion that it could plausibly allege under this statute. For example, Bonanza identifies two specific

---

[46] *Id.*
[47] *Twombly*, 550 U.S. at 570.
[48] ECF No. 1-2 at ¶¶ 83–93.
[49] ECF No. 13 at 9.
[50] ECF No. 1-2 at ¶ 84.

10

change-in-control provisions that it argues conflict with Nevada law and thus constitute an unreasonable delay or withholding of approval in violation of NRS 597.157.[51] These are the provisions that give MillerCoors the right (1) to exclusively negotiate with Bonanza for 90 days after Bonanza provides notice of its intent to sell and (2) of first refusal of any offer to purchase Bonanza's franchise rights. Bonanza also appears to argue that an unreasonable delay or denial of approval is inherent in the process due to the number of steps that it must comply with—and the length that each takes to complete—before it can sign a non-binding letter of intent with a third-party purchaser.[52] But Bonanza does not plead any of these theories in its third claim for relief, so I grant MillerCoors's dismissal motion and give Bonanza leave to amend this claim.

### B. Bonanza's second claim is dismissed with prejudice as to violations of NRS 369.382 but can proceed as to violations of NRS 597.210.

Bonanza alleges in its second claim that MillerCoors's actions of invoking its contractual right to exclusively negotiate with Bonanza, assigning that right to Breakthru Beverage Nevada Beer, LLC (Breakthru), and demanding that Bonanza sell its franchise rights to Breakthru are acts of engaging in the wholesale business and thus violate both NRS 597.210 and 369.382.[53] MillerCoors argues that this claim fails because (1) there is no private right to sue under NRS 369.382 and (2) the factual allegations don't amount to a violation of either statute.[54]

Bonanza attempts to deflect MillerCoors's first point in a footnote, arguing that it is "of no moment" that there is no private right of action under NRS 369.382 because Bonanza also sues MillerCoors under the parallel NRS 597.210 and that Bonanza merely identified

---

[51] ECF No. 36 at 11.
[52] *Id.*
[53] ECF No. 1-2 at ¶¶ 73–82.
[54] ECF No. 13 at 13–17.

11

NRS 369.382 to show that MillerCoors was aware of this prohibition.[55] But NRS 369.382 isn't merely window dressing for Bonanza's second claim as pled. Bonanza refers to that statute without caveat right along with NRS 597.210 in the claim's heading and text. As there is no private right of action under NRS 369.382,[56] the parts of Bonanza's second claim alleging violations of NRS 369.382 are dismissed with prejudice.

MillerCoors's second point raises a question of statutory interpretation—whether MillerCoors's alleged conduct falls within the meaning NRS 597.210's "[e]ngage in the business of . . . wholesaling." MillerCoors takes a narrow reading of what this quoted language encompasses—only the acts of purchasing alcoholic beverages from suppliers and reselling them to retailers.[57] Bonanza does not allege that MillerCoors has or is doing either of those acts so, MillerCoors concludes, Bonanza has not plausibly alleged that MillerCoors violated this statute.[58] MillerCoors fully acknowledges that it cannot "engage in the business of wholesaling" due to Nevada's "tied house statutes." MillerCoors explains that is the reason why it assigned its contractual right to exclusively negotiate to Breakthru.[59] According to MillerCoors, it would be "illogical" to conclude that it simultaneously violated Nevada's laws when it complied with them.

Bonanza has a broader view of what it means to engage in the wholesale business.[60] It points out that "engage in," as defined by statute, "includes participation in a business as an

---

[55] ECF No. 36 at 20, n.15.

[56] *See* Nev. Rev. Stat. § 369.560 (authorizing civil actions for violation of certain enumerated statutes).

[57] ECF No. 13 at 14–15.

[58] *Id.* at 15.

[59] *Id.*

[60] ECF No. 36 at 20–22.

12

owner or partner, or through a subsidiary, affiliate, ownership equity or in another manner."[61] Bonanza then pivots from this definition to the Legislature's stated policy of protecting locally owned and operated businesses from the "economic and coercive control by nonresident suppliers of alcoholic beverages[,]"[62] before coming back to NRS 597.210's prohibition against suppliers engaging in the wholesale business. Bonanza asks me to read these statutes in harmony and find that the meaning of "engage in" the wholesale business is broad enough to cover MillerCoors's alleged conduct of invoking and assigning its contractual right to negotiate to purchase Bonanza's franchise rights. Neither side argues that these statutes are ambiguous.

Bonanza's interpretation of NRS 597.210 is reasonable. In so concluding, I am guided by the Nevada Legislature's above-stated policy of protectionism and by the fact that the phrase "engage in" is broadly defined in NRS 597.200(6) as "participating in a business as an owner . . . or in any other manner." As only a wholesaler is authorized to distribute alcoholic beverages in Nevada under the circumstances alleged, the acts of invoking a contractual right to negotiate to purchase distribution rights and assigning the right to negotiate to a third party reasonably fall within the ordinary meaning of participating in a business "as an owner" or at least "in any other manner." The parties have not fully explored this issue of statutory interpretation, so I decline to further construe this statute at this stage. Bonanza has stated a plausible claim that MillerCoors violated NRS 597.210 by invoking and then assigning its negotiation rights to Breakthru, so it can proceed on that part of its second claim.

---

[61] Nev. Rev. Stat. § 597.200(6).
[62] *Id.* at § 597.190.

13

C.     **Bonanza's first claim is dismissed with leave to amend.**

Bonanza alleges in its first claim that disputes exist between it and MillerCoors regarding the validity and enforceability of the change-in-control section of their agreement under Nevada law. It contends that these disputes are valid, justiciable, and concern the parties' rights and duties under the agreement. Bonanza seeks a declaration that the change-in-control section is unenforceable, void, and severed from the agreement. It also seeks an injunction preventing MillerCoors from attempting to enforce any part of it.

MillerCoors argues that this claim must be dismissed because declaratory relief is only a remedy and thus stands or falls with Bonanza's other claims.[63] But Bonanza has stated a plausible claim that MillerCoors violated NRS 597.210, and Bonanza also appears able to state a plausible claim that MillerCoors violated NRS 597.157. MillerCoors also argues in a footnote that NRS 30.040 is the "wrong statute" now that this case is in federal court and that I should apply the federal Declaratory Judgment Act, 28 U.S.C. § 2201.[64] But MillerCoors doesn't argue that this claim fails under the federal counterpart, which authorizes federal courts, upon the filing of an appropriate pleading, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[65]

The legal defect in Bonanza's first claim is that it seeks a declaration that the entirety of the change-in-control section is void under NRS 597.157(5) based on Bonanza's interpretation of NRS 597.157(1). I have already explained why Bonanza's broad interpretation of NRS 597.157(1) is unreasonable. But, like with its third claim, Bonanza hints at plausible

---

[63] ECF No. 13 at 19.
[64] *Id.* at n.13.
[65] 28 U.S.C. § 2201.

14

declaratory relief theories in its briefs. I therefore grant MillerCoors's motion to dismiss Bonanza's first claim and give Bonanza leave to amend it.

**D. Bonanza can proceed on its demand for punitive damages.**

Finally, MillerCoors moves to dismiss Bonanza's demand for punitive damages, arguing that the only relevant statute that authorizes this relief is NRS 597.225, but only for third and subsequent violations of NRS 597.210, which Bonanza has not alleged.[66] Bonanza responds that it has pled acts within this statute because it alleges that MillerCoors repeatedly failed to respond to Bonanza's proposed sale notice and repeatedly tried to exercise an interest in Bonanza's business.[67] Accepting Bonanza's well-pled factual allegations as true, which I must at this stage, and noting that Bonanza's interpretation of NRS 597.210 is reasonable, I conclude that Bonanza has plausibly pled a basis to seek punitive damages.

**II. Bonanza's motion for a preliminary injunction.**

"A preliminary injunction is an extraordinary remedy never awarded as of right."[68] The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, the plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."[69] The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a

---

[66] ECF No. 13 at 20.
[67] ECF No. 36 at 24.
[68] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).
[69] *Id.* at 20.

15

preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."[70]

Under these standards, Bonanza is required to demonstrate that it is likely to suffer irreparable harm unless MillerCoors is enjoined from invoking its contractual rights to exclusively negotiate with Bonanza and assigning that right to a third party.[71] "Irreparable harm requires a showing that the harm 'is *likely* in the absence of an injunction.'"[72] Meaning, "[t]here must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined, and showing that 'the requested injunction will forestall' the irreparable harm qualifies as such a connection."[73] But "a plaintiff 'need not further show that the action sought to be enjoined is the exclusive cause of the injury.'"[74]

Bonanza argues that it "stands to lose valuable and unique property rights, goodwill, and other intangibles" if MillerCoors isn't enjoined from enforcing its contractual rights.[75] I disregard the reference to intangibles because it is fatally vague. I also disregard the goodwill argument because Bonanza doesn't analyze or connect it to the activities that it seeks to enjoin. As for the property rights, Bonanza explains that it will lose its right of alienation,[76] which it describes as the "statutory right" to "market and sell" its franchise rights "in the manner it deems

---

[70] *Shell v. Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[71] Because I have dismissed all but the part of Bonanza's second claim alleging that MillerCoors violated NRS 597.210, I limit my analysis of this motion to those allegations.

[72] *Nat. Wildlife Fed. v. Nat. Marine Fisheries Servs.*, 886 F.3d 803, 819 (9th Cir. 2018) (quoting *Winter*, 555 U.S. at 22).

[73] *Id.* (quoting *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011)).

[74] *Id.* (*M.R. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012)).

[75] ECF No. 6 at 21.

[76] *See* ECF No. 46 at 4.

best for itself and its employees."[77]  This claimed right is based on Bonanza's interpretation of NRS 597.157(1) that I rejected in Section I.[78]  So, Bonanza has not shown that it is likely to be irreparably harmed by the loss of that right.

Bonanza argues in its supplemental brief that it and its owner will be "forced to endure the stressors inherent in ownership while simultaneously being denied lucrative professional opportunities."[79]  Bonanza claims that its employees are also being prevented from pursuing professional opportunities.[80]  Bonanza argues that I should consider the harms to its owner and employees, even though they are not parties to this lawsuit, because "[i]rreparable harm should be determined by reference to the purposes of the statute being enforced"[81] and the stated purpose of the statutes is to protect locally owned businesses and any resident whose livelihood depends on them from pressures of nonresident suppliers.[82]  MillerCoors responds that there is no evidence to support this new theory of stress to Bonanza and its owner and, regardless, as a corporate entity, Bonanza is incapable of suffering stress.[83]  MillerCoors also argues that harms alleged against nonparties are irrelevant.[84]

I am not persuaded that the purpose of the statute being enforced changes the calculus of whose irreparable harm is relevant under either injunctive-relief standard.  Rather, it is "the kinds

---

[77] ECF No. 6 at 21.
[78] ECF No. 46 at 7.
[79] *Id.* at 8.
[80] *Id.* at 9.
[81] *Nat. Wildlife Fed.*, 886 F.3d at 818.
[82] ECF No. 46 at 3, 9–10.
[83] ECF No. 51 at 7–8.
[84] ECF No. 51 at 9 (quoting *Wooten v. BNSF Railway Co.*, 2017 WL 1089546, at *1 (D. Mont. March 21, 2017)).

of harms that may be irreparable [that] 'will be different according to each statute's structure and purpose.'"[85] As the Supreme Court instructed in *Winter*, what the plaintiff must establish under the second prong is that "**he is** likely to suffer irreparable harm in the absence of preliminary relief."[86] I therefore decline to impute alleged harms to Bonanza's owner and employees to the company itself.[87]

As for the "stressors" or "burdens" of remaining in business, Bonanza concludes that it will suffer them without explanation or evidence. The only other company-specific harm Bonanza identifies is that MillerCoors's action of invoking an allegedly illegal contract term threatens to kill Bonanza's deal with SGWS.[88] But there is no evidence to support this bald assertion, and conclusions like this are insufficient to show that irreparable harm is likely. Thus, Bonanza has failed to show that it is likely to suffer irreparable harm absent an injunction. This is fatal to its request for the extraordinary remedy of pretrial injunctive relief, so I deny the motion.

### III. Bonanza's motion for summary judgment is denied as moot.

Finally, Bonanza moves for summary judgment on its declaratory-relief claim, arguing that it is entitled to an order declaring that the entirety of the change-in-control provisions in the agreement are void and unenforceable as a matter of law.[89] This argument is based on Bonanza's interpretation that NRS 597.157(1) should be read to displace and void any contract

---

[85] *Nat. Wildlife Fed.*, 886 F.3d at 818 (quoting *Sierra Club v. Marsh*, 872 F.2d 497, 502–03 (1st Cir. 1989)).

[86] *Winter*, 555 U.S. at 20 (emphasis added).

[87] This includes Bonanza's hyperbolic argument that "it will suffer irreparable harm akin to involuntary servitude" if it "is forced to sell and work for Breakthru." ECF No. 46 at 10–11.

[88] ECF No. 6 at 22.

[89] ECF No. 47.

18

provisions about the sale of a wholesaler's franchise rights and grants wholesalers a right to freely alienate and transfer their franchise rights subject only to the exception that the person to be substituted meets the supplier's reasonable standards. As I explained in Section I, Bonanza's interpretation of NRS 597.157(1) is not reasonable, and that is the reason why I have dismissed Bonanza's declaratory-relief claim and given Bonanza leave to amend it. Thus, I deny Bonanza's motion for summary judgment on that claim as moot, and I also deny as moot MillerCoors's motion to strike new argument and evidence from Bonanza's summary-judgment reply or, alternatively, for leave to file a surreply.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that MillerCoors's motion to dismiss **[ECF No. 13] is GRANTED in part**: Bonanza's first and third claims are dismissed with leave to amend **by January 10, 2019**, and the part of Bonanza's second claim alleging that MillerCoors violated NRS 369.382 is dismissed with prejudice. The motion is **DENIED** in all other respects.

IT IS FURTHER ORDERED that Bonanza's motion for a preliminary injunction **[ECF No. 6] is DENIED** and Bonanza's summary-judgment motion **[ECF No. 47]** and MillerCoors's motion to strike or, alternatively, for leave to file a surreply **[ECF No. 58] are DENIED as moot.**

Dated: December 21, 2018

_____
U.S. District Judge Jennifer A. Dorsey