UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BONANZA BEVERAGE CO.,

                    Plaintiff,

        v.

MILLERCOORS, LLC,

                    Defendant.

Case No.: 2:18-cv-01445-JAD-GWF

**ORDER**

**Re: Motion to Compel
Compliance with Subpoena
(ECF No. 57)**

**Motion to Quash Subpoena
(ECF NO. 61)**

This matter is before the Court on Plaintiff's Motion to Compel Third Party Breakthru Beverage Co. to Comply with Subpoena (ECF No. 57), filed on October 24, 2018, and Non-Party Breakthru Beverage Nevada Beer, LLC's Motion to Quash Subpoena (ECF No. 61), filed on October 25, 2018. The Court conducted a hearing in this matter on December 3, 2018.

**BACKGROUND**

Plaintiff Bonanza Beverage Co. ("Bonanza") is a wholesale distributor of alcoholic beverages in Nevada. Defendant MillerCoors LLC ("MillerCoors") is a supplier of malt beverages to wholesalers in Nevada and other jurisdictions. Bonanza entered into a Distributor Agreement with MillerCoors in 2009. The dispute in this case involves Bonanza's desire to sell its distribution business to Southern Glaser's Wines & Spirits (hereinafter "Southern Glazer's" or "SGWS").[1]

---

[1] The factual and legal background of this action is more fully set forth in Orders (ECF Nos. 88 and 96) which are incorporated herein as if set forth in their entirety.

1

After Bonanza notified MillerCoors that it intended to sell its distributorship to Southern Glazer's, MillerCoors asserted its right under Section 8 of the parties' Distributor Agreement to assign its right to negotiate a purchase of Bonanza's business to Breakthru Beverage Nevada Beer, LLC ("Breakthru"). Bonanza informed MillerCoors that it preferred to sell to Southern Glazer's which is willing to purchase all of Bonanza's assets and to consider hiring Bonanza's employees, including Bonanza's vice-president and co-owner. *First Amended Complaint* (ECF No. 90), at ¶ 62. Bonanza also has reservations about Breakthru arising from unsuccessful joint venture negotiations in 2013. *Id.* at ¶ 63. Bonanza nevertheless met with Breakthru to discuss a potential sale of the business, but decided that it was not in its best interests to sell to Breakthru. *Id.* at ¶¶ 64-67. Bonanza alleges that MillerCoors never responded to its repeated requests to consider Bonanza's proposed sale to Southern Glazer's. *Id.* at ¶¶ 66-69. MillerCoors argues, however, that Bonanza never presented it with a nonbinding letter of intent to sale its business to Southern Glazer's as required by Section 8.8. MillerCoors states that if presented with a letter of intent to sale, it intends to assign its right of first refusal to Breakthru.

The Court has identified two issues to be determined in this action. The first issue is whether the "change-in-control-and-ownership" provisions of Section 8 of the Distributor Agreement violate NRS 597.157.1 because they "individually or together constitute an unreasonable delay or denial of approval" of the sale of Bonanza's distributorship to a qualified purchaser. *Order* (ECF No. 88), at 8 n. 38. The second issue is whether the provisions violate NRS 597.210.1(a) which prohibits a supplier, such as MillerCoors, from engaging in the business of importing, wholesaling or retailing alcoholic beverages. The Court has also held that Plaintiff has stated a plausible claim for punitive damages based on MillerCoors' alleged violation of NRS 597.210.1(a).

Following entry of Order (ECF No. 88), Bonanza filed its First Amended Complaint. In its first claim for declaratory relief, Bonanza alleges that provisions of Section 8 violate NRS 597.157, 597.162(5), and 597.210 and should be declared invalid. *First Amended Complaint* (ECF No. 90), at ¶¶ 80-87. The second claim for relief alleges that "MillerCoors' actions 'to negotiate exclusively with [Bonanza],' and the purported assignment of its alleged exclusive

2

negotiation rights to Breakthru for the sale of Bonanza's business constitute illegal attempts to dictate the terms and conditions of a change in control of ownership in the business of wholesaling in violation of NRS 597.210." *Id.* at ¶¶ 96-102. The third claim for relief alleges that MillerCoors has violated Bonanza's rights under NRS 597.157 by refusing to consider Bonanza's request to transfer its franchise right to Southern Glazer's, and by invoking the provisions of Section 8 that violate Nevada law and constitute an unreasonable delay or denial of approval. *Id.* at ¶¶ 109-114.

On October 5, 2018, Bonanza served a subpoena duces tecum on Breakthru directing it to produce the following documents:

**A.** Any distributor agreement or other contracts or agreements you have with MillerCoors LLC, regarding your franchise in Nevada, as that term is defined in Nev. Rev. Stat. § 597.130 from 2008 to the present.

**B:** All documents that reference, relate to, or concern your potential acquisition of some or all of Bonanza Beverage Co.s' ("Bonanza") franchise rights in Nevada, as franchise is defined in Nev. Rev. Stat. § 597.130, from 2013 to the present.

**C:** All documents, including communications between you and MillerCoors from 2013 to the present that reference, relate to, or concern Bonanza.

**D:** All documents, including communications, between you and Republic National Distribution Company from May 2018 to the present that reference, related to, or concern Bonanza.

**E:** All contracts or agreements, whether executed or not, including all drafts, notes, and comments, between you and MillerCoors LLC, that reference, concern, or relate to Bonanza's franchise rights, as franchise is defined in Nev. Rev. Stat. § 597.130.

**F:** All contracts or agreements, whether executed or not, including all drafts, notes and comments, between you and Republic National Distribut[ing] Company that reference, concern, or relate to Bonanza or Bonanza's franchise rights, as franchise is defined in § 597.130.

**G:** All documents exchanged between you and MillerCoors LLC, including communications, agreements, draft agreements, proposals or otherwise that reference, relate to or concern Bonanza.

**H:** All documents, including communications, between you and MillerCoors, LLC that reference, relate to, or concern Southern Glazer's Wine & Spirits of

3

Nevada, LLC ("SGWS"). This includes, but is not limited to, documents or calendar entries relating to oral conversations, whether on the phone or in person, to discuss SGWS's offer to purchase Bonanza's assets, including its MillerCoors franchise rights.

**I:** All documents, including communications, notes, and memoranda, regarding your June 11, 2018, meeting with Bonanza to discuss Bonanza's franchise rights, as franchise is defined in Nev. Rev. Stat. § 597.130.

**J:** All documents, including communications, that reference, relate to, or concern your efforts to match, or meet equivalent terms of, SGWS's offer to purchase Bonanza's assets, including its MillerCoors franchise rights.

**K:** All documents, including communications, that reference, relate to, or concern the conditional assignment of right of exclusive negotiation you and MillerCoors entered into on or about May 31, 2018.

**L:** All documents, including communications, that reference, relate to, or concern MillerCoors evaluations of you as a MillerCoors distributor in Nevada, regardless of whether those evaluations are under MillerCoors' Distributor Standards, from 2013 forward.

**M:** All documents, including communications, that reference, relate to, or concern any objections you had to any portion or section of the Distributor Agreement described in Category A above.

At the time the subpoena was served, Bonanza's complaint alleged that Section 8 of the Distributor Agreement was invalid under Nevada law, and that MillerCoors' only right with respect to Bonanza's proposed sale to Southern Glazer's was to determine whether Southern Glazer's met MillerCoors' reasonable demands regarding a qualified wholesaler under NRS 597.157.1. Bonanza's pending motion for summary judgment was based on that same assertion. Breakthru objected to all of the subpoena topics on the grounds that Bonanza's claims against MillerCoors involve purely legal issues of statutory interpretation, and therefore the document requests were irrelevant. Order (ECF No. 88) has clarified the basis upon which Bonanza may challenge the validity of the provisions in Section 8 of the Distributor Agreement and assert causes of action for damages and injunction relief against MillerCoors. Based on that decision, some discovery is relevant and necessary.

///

///

4

## DISCUSSION

Fed.R.Civ.P. 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Bonanza relies on an outdated and incorrect view of the scope of discovery under Rule 26(b)(1). It cites *Holland v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5967035, at *1 (D.Nev. Nov. 8, 2013) which quoted the Supreme Court's statement in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389 (1978). At the time *Oppenheimer* was decided, Rule 26(b)(1) stated that parties may obtain discovery regarding any nonprivileged matter that is relevant to the subject matter of the action. The Court stated that the key phrase---"relevant to the subject matter involved in the action"---"has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *See Motion to Compel* (ECF No. 57), at 7. Again relying on *Holland*, Bonanza asserts that "the test is not whether the discovery sought is admissible; rather the standard is whether the proposed discovery is reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Rule 26(b)(1) was amended in 2000 to narrow the scope of discovery to "any matter, not privileged, that is relevant to any party's claim or defense." The general consensus of the courts was that the 2000 amendments did not dramatically alter the scope of discovery and that the meaning of relevancy under Rule 26 remained extremely broad. *U.S. E.E.O.C. v. Caesars Entertainment*, 237 F.R.D. 428, 431 (D.Nev. 2006). Some courts stated, however, that the 2000 amendments were intended to narrow the scope of discovery in some meaningful way. *Id.* The 2015 amendments to Rule 26(b)(1) have further refined and limited the scope of discovery by placing the need for proportionality at the forefront of the rule. *See Roberts v. Clark County*

School Dist., 312 F.R.D. 594, 602-03 (D.Nev. 2016) (discussing the history of amendments to Rule 26 since the late 1970's which were intended to encourage trial courts "to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse."). In *San Diego Unified Port Dist. v. National Union Fire Ins. Co. of Pittsburg, Pa.*, 2017 WL 3877731, at *1 (S.D.Cal. Sept. 5, 2017), the court stated that "the *Oppenheimer Fund* definition, like the version of Rule 26(b)(1) that preceded the 2015 amendments, is now relegated to only historical significance."

The 2015 amendments also eliminated the phrase that information is discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." This phrase was replaced with the more direct statement that "[i]nformation within this scope of discovery need not be admissible to be discoverable," thus re-emphasizing that relevance is the touchstone of discovery. *In re Bard IVC Filters Products Liability Litigation*, 317 F.R.D. 562, 563-64 (D.Ariz. 2016). *See also K.D. v. United* Airlines, 2018 WL 4566681, at *1 (D.Nev. Sept. 24, 2018) ("To be permissible, discovery must be 'relevant to any party's claim or defense."). Although relevancy under current Rule 26(b)(1) remains broad in scope, it is more limited than it was under the pre-2000 version of the rule. Moreover, even if the discovery is relevant, the parties and the court are required to give greater consideration to the proportionality of the discovery.

Breakthru's current distributor agreement with MillerCoors (assuming it is the same as the agreement that existed in May 2018) is relevant to the claims and defenses in this lawsuit. The distributor agreement may contain change-of-control provisions substantially similar to those in the Bonanza/MillerCoors' Distributor Agreement. These provisions are relevant to the degree of control that MillerCoors exercises over the rights of wholesalers to sale or transfer their distributorships, and whether that control violates NRS Chapter 597. Any objections that Breakthru made to MillerCoors that the change of control and ownership provisions in its distributor agreement violate Nevada law are also relevant and discoverable.

Documents relating to MillerCoors' 2018 assignment to Breakthru of its of rights to negotiate the purchase of Bonanza's business are relevant. Documents relating to agreements or

plans to assign MillerCoors' right of first refusal to purchase Bonanza's business on the same terms that Southern Glazer's offers, and any other matters relating to Breakthru's involvement in a proposed transfer or sale of Bonanza's business after May 2018 are also relevant and discoverable. [2]

Bonanza's claims against MillerCoors are not predicated on Breakthru being unqualified or unsuitable to purchase its business. Rather, it alleges that the provisions of Section 8 of the Distributor Agreement and the manner in which MillerCoors is attempting to enforce those provisions violate NRS Chapter 597 regardless of whether MillerCoors' preferred transferee or purchaser is a qualified or suitable purchaser. Nor has MillerCoors alleged that Bonanza violated the Distributor Agreement by refusing or failing to negotiate in good faith with Breakthru. Therefore, documents relating to Bonanza's 2013 negotiations with Breakthru regarding a joint venture agreement, or other documents relating to Breakthru's business dealings with MillerCoors, or its qualifications as a distributor, are irrelevant, or so tangential as to not be proportional to the claims and defenses. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Bonanza's Motion to Compel Breakthru Beverage Co. to Comply with Subpoena (ECF No. 57) and Non-Party Breakthru Beverage Nevada Beer, LLC's Motion to Quash Subpoena (ECF No. 61) are **granted**, in part, and **denied**, in part, as follows:

Breakthru is ordered to produce documents relating to (1) Breakthru's current Nevada distributor agreement with MillerCoors, and any Nevada distributor agreement that was in effect since May 2018 if different from its current distributor agreement; (2) Any objection that Breakthru made to MillerCoors' since 2008 that the change of control and ownership provisions in its distributor agreement violate Nevada law; (3) MillerCoors' 2018 assignment to Breakthru of its right to negotiate the purchase of Bonanza's business; (4) agreements or plans to assign

/ / /

/ / /

/ / /

---

[2] "Documents" include electronically stored information such as email communications.

MillerCoors' right of first refusal to purchase Bonanza's business on the same terms that Southern Glazer's offers; and (5) any other matters relating to Breakthru's involvement in a proposed transfer or sale of Bonanza's business since May 2018.

DATED this 23rd day of January, 2018.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**